All rise. The United States Court of Appeals for the Ninth Circuit is now in session. Thank you. Good morning. I'm Judge Gould and I'm sitting with Judge Christen and Judge Brass. And we welcome distinguished counsel and appreciate your patience in helping us out with this remote argument. We can proceed to the argument. I'll just however advise Ms. Sparza to please note that the clock up there, the clock runs downward. When it gets to the end, it'll start running up. If you see numbers after it's gotten to the end, that means you've gone over your time. So you should try to complete your argument within 10 minutes if you can. And if you want to reserve time for rebuttal, you should stop before it's all gone. However, as I said, this is the only case with an oral argument today. So if you absolutely need an extra minute or two, I'll add that to your time. And also, of course, you should take whatever time you want to respond to any questions from the panel. Hearing nothing else, we can proceed to the argument. Thank you. Well, good morning. My name is Sylvia Sparza and I'm the attorney for the petitioner, Maria Fuentes. So I believe that there are two questions for this court to resolve. And the first one is whether the matter of AB articulated the correct rule regarding circularity. And the answer to that question is no. The second question for the court to resolve is whether the BIA can rely on matter of AB to categorically reject a particular social group that has the harm within the definition. And the answer to that is no. The Board of Immigration Appeals has to conduct a case-by-case analysis of every claim. So in regards to the first issue, matter of AB cites to matter of NEVG, matter of WGR, and matter of CA. And those cases have no textual support for the proposition that you cannot have the harm included in the definition. In fact, those cases say that a particular social group cannot be exclusively defined. It cannot be solely defined. The persecutory conduct cannot alone be an element of the particular social group. I don't know, counsel, if that's quite what it says, because it says it has to be independent of the harm. And so that's a little bit different, isn't it? Well, it says it has to be independent, but it doesn't say that it can't have that as an element of the definition. So, for example, rape victims. So this would be a particular social group that I think might not be cognizable. So in CA, you mentioned CA, and I do think we have to trace this back to CA. That's certainly what the Attorney General was cautioning the BIA about, about the need to look at the existing case law and apply it. And in going back to CA, the BIA cited the UN High Commissioner for the proposition that harm, forgive me, that a particular social group can't be identified exclusively by harm. And I think that emphasis is in the original, right? Correct. So what I'd like to know, and I'm going to ask opposing counsel, is where has the BIA said in its existing case law that harm cannot be included? I fully appreciate it can't be exclusively defined by harm, because that's the circularity problem that would make this a catchall. But where have they ever said that harm cannot be included? Yeah, I mean, our position would be that it hasn't said that. It can't be defined solely by that, but it has never said that it can't be included. Okay, so then, and I can go back to Judge Brass's question if I could, because he's pointing out the word independently, as opposed to exclusively, is used in AB. So is it your position that AB announces a new rule, or does AB tell us to look at the existing case law? Well, I think that it is announcing a new rule if the rule is saying that you can never have a particular social group that has any element of harm. And if the matter of AB is really going back to MEVG and CA and WGR, then those cases say you just can't have a particular social group solely defined by the harm. But if that's right, wouldn't AB have to come out the other way? Wouldn't the recommendation in AB have been the opposite? I'm not sure I understand the question. Well, let me try it a different way. I think in AB, you had the social group that was partially defined by the harm, but it was also defined by other characteristics of the petitioner, such as their gender or their nationality. And so it would seem that on your logic, AB should have come out exactly the opposite. Well, I mean, the rules that they're using, which is MEVG and CA and WGR, do allow for the harm to be part of the definition. But the way that it's being interpreted is that it can never be part of the definition. So I agree that the end result should have been the same rules that we've had before, which is that it just can't be solely defined by the harm. But that isn't what, I guess, the board is interpreting this rule, or the integration judges, they're interpreting this rule to say, categorically, you know, if a particular social group includes harm, then it's not cognizable. End of discussion. But getting back to, I appreciate that there seems to be a difference of opinion about how to interpret AB, but setting aside how it's applied, if we look at AB itself, I read AB to caution that the mistake, really, in the case law was ARCG. That there, the BIA didn't do a rigorous analysis, and it jettisoned this case law that we've talked about that goes back to CA, didn't apply it, and so remanded AB to apply the correct, I mean, ARCG, to be sure, expressly overruled it, really remanded AB to apply the existing case law. Do you think I have that wrong? I mean, I think that matter of ARCG was correctly decided. But the Attorney General doesn't. I'm just trying to get to your read of AB. The Attorney General, I think, in AB expressly overrules ARCG, and says it was incorrectly decided, and then remands AB to apply the pre-ARCG case law. And that's how I read AB, and my question is not whether you agree with AB, if I could, Counsel. My question is, do you read AB differently? Well, I mean, I read AB in saying that we have to use, I mean, the decision says we have to use MEVG and CA and WGR, and those decisions do include the rule that you can use harm as part of the element. It just can't be the only element. So if AB had done a proper analysis, then it would have come out just like matter of ARCG. This is the problem with matter of AB. Counsel, Judge Gould, if I could interject a question, please. Does our court on this petition have to make a final determination whether the asserted social group is cognizable, or rather, are you asking us to vacate the decision of the BIA and to remand to the BIA to perform a particularized analysis, taking into account the cases that you mentioned, Yes, Judge, I would agree. And come to a reasoned conclusion rather than doing a cursory or conclusory summary. Yes, Judge, I definitely would agree. That would relate directly to my second point, and that is that matter of AB, the Board of Immigration Appeals relied on matter of AB to summarily reject the particular social group without doing that case-by-case analysis that is required of every case. So even if this court does not want to make a finding of whether the particular social group is cognizable, or if my interpretation, or if the matter of AB's interpretation of the circulatory rule is correct, this court should remand anyway because the Board of Immigration Appeals certainly did not do an analysis of the facts in Ms. Fuentes' case. They just said this particular social group looks like matter of ARCG. We've overruled that. Therefore, it doesn't work here. And that certainly is not what the case law says with the Board and also with this court. And even matter of AB, of course, says that there are some claims that can be established involving domestic violence, involving harm. So it left the door open, and it didn't even do that analysis, even saying that there could be some claims that could establish asylum. So I would agree that a remand is appropriate to do this case-by-case analysis. I guess I'm confused as to what case-by-case analysis you think would need to happen on a remand. What would that look like? Well, the Board of Immigration Appeals in the one sentence basically just said this particular social group looks like matter of ARCG, and therefore it's not cognizable and didn't really apply the facts of the case to the case law. And I'm sorry, I wasn't looking at the clock. I did want to reserve two minutes for rebuttal. Okay, well, don't worry about that. You need to answer the questions of the judges. We've taken up your time, so we'll give you a few minutes on rebuttal. Thank you. Other questions of counsel of the other judges at this time? Judge Brest, anything? Well, Judge Gould, if I may, just to close out this line of questioning, I guess, counsel, the question I have is if it was—if AB is entitled to deference and if AB creates an impediment for your client's case, I'm still just not sure what more is supposed to happen on remand and why it wasn't appropriate for the BIA to rule on that ground. What other argument would you have that you've preserved that would warrant a remand? Well, I guess our position is that if it was remanded, and if the BIA did its duty to review the case, the facts of the case and apply the law, then they'd have to go fact by fact and apply the law, not just dismiss the case based on the particular social group. I think the problem here is that the BIA did not do any type of analysis. They just automatically rejected the case because the particular social group looked like matter of ARCG. And, of course, my case was pending. We articulated that particular social group because matter of ARCG was good law. And on appeal is when matter of AB came out, and we asked for remand to be able to re-articulate another particular social group, and they did not do that. So I understand the remand that's required is that the attorney general on the pre-existing BIA case law says that the common characteristic has to be considered, has to be identified, and defined without regard to harm, and then the three-part test has to be applied, immutability, particularity, and what we now call social distinction as opposed to visibility. I'm not trying to put words in your mouth, but I'm trying to make sure that I understand what you mean by what would happen on remand. Do you mean something different? No, I mean that the Board of Immigration Appeals would have to apply those three elements to see if the particular social group met those three elements, but also apply it to the facts of her case. Yes, all right. Thank you. Counsel, I think you've used your time and gone over a little bit. However, after the government makes its argument, we'll give you an extra three minutes for rebuttal. And if the government wants three minutes extra time for their argument, we'll give that to them, too. Okay, so we thank Ms. Esparza. And now I think we have Blaine. Oh, wait. Let me ask the question. Do we have Blaine Bookie arguing? Yes, Your Honor. May it please the Court, Blaine Bookie, the Center for Gender and Refugee Studies. The matter of AB is fundamentally flawed in three respects. First, at page 335 of the opinion, the Attorney General identified the social group as effectively defined as Guatemalan women who are victims of domestic abuse. But this was not the group that advanced the petitioner, which was married Guatemalan women unable to leave their relationship. The Attorney General, therefore, violated the rule. This Court and the agency that claims must be evaluated according to the group. This leads me to the second point. The Attorney General justified distortion of the social group based on an entirely erroneous assumption that a woman's inability to leave is synonymous with persecution. This is contrary to the agency's long-held understanding that inability to leave can be caused by numerous factors, other than the risk of harm. Third, which was the focus of the petitioner's counsel's argument, in rejecting the group as circular, even if you accept that it is defined in part by the harm, the Attorney General departed from the agency's settled interpretation of the circularity principle, which has never required complete independence from the harm, without acknowledging or providing a reason for this change. With respect to the distortion of the social group, the Attorney General simply got the wrong answer on the group's cognizability because he was asking the wrong question. The group that had been proposed in ARCG was defined by gender, nationality, domestic relationship status, and an inability to leave. But the group that he rejected in AB was a distorted group that he defined primarily as victims of domestic abuse. So he inserted a circularity problem here when there was none. And this distortion violates the rule that an adjudicator must consider the group as delineated by the applicant. And the distortion of the social group finds no factual support, and indeed the Attorney General cites no factual support, and breaks from the consistently held position by both DOJ and DHS for nearly two decades that an inability to leave can be for a myriad of factors, other than the fear of harm. These factors include where there are legal, religious, social, cultural constraints that keep women in relationships, or where their abuser would not recognize they have the ability to unilaterally terminate a relationship. The facts of Ms. AB's case herself provide a stark example of this. She was able to obtain a divorce, but within minutes her abuser said to her, you think you're free, you're wrong. In his eyes, in the eyes of his family and society, she was not able to leave, even though she had obtained a divorce, irrespective of the persecution. And it's precisely because- I guess, Counsel, just to ask a broader question, I mean, we've held that this statute is ambiguous. The Attorney General gets some degree of deference, perhaps a significant degree of deference. And so I guess I wonder, in light of that, in light of the circularity problem, in light of the language of the statute, which we've held is ambiguous, why AB is not a reasonable interpretation of the statute. Yes, Your Honor, we would agree that the Attorney General's decision interpreting a particular social group is entitled to this court's deference, but the decision-making needs to be reasonable. And here, the Attorney General's decision was wholly contrary to law, that he has to analyze the actual group proposed. Moreover, it was- Wait a minute. Excuse me, Counsel. So does that mean you think that- forgive me for interrupting, but this is an important point. Do you think AB announced a new rule? No, Your Honor. I believe that the Attorney General violated the law by analyzing a social group that wasn't proposed by the applicant, and he justified this on his assumptions regarding inability to leave by distorting the social group. Okay, but you're answering a different question than the one Judge Bress asked, and this is an important point. Yes, Your Honor. It's our position that by analyzing the incorrect social group, which was not proposed by the applicant, this is an independent basis for the court deference to the Attorney General's decision in AB. It is an independent reason. And the second reason would be because the Attorney General did so based on his assumptions, meaning that his decision-making had no rational basis in the facts, and the Attorney General, the choices that he made, must make his decisions based on the underlying factual assumption. And it's clear here that the Attorney General sought to place his thumb very strongly on the scale against these cases, and the Board's decisions in all of the cases under review today really bear that out. It's vital for this Court to make clear that AB does not and does not impose any such rule, really upends core principles of asylum law and merits overruling by this Court. I see I'm over my time. Thank you, Counsel. We appreciate your argument and expertise, so I think we'll thank you and then let the government make its argument. May it please the Court. I'm Susan Green for the Attorney General. Your Honors, I was going to address the AB questions, and my colleague here, Ms. Greer, is going to address the CAT questions, if any come up. And also, there was a 28J that was filed last night that talks about detention, and Ms. Greer is in a position to be able to answer any questions you may have about that 28J. First, I'd like to address the questions that the Court posed to the parties about the matter of AB. The first question is whether matter of AB changed the Board's existing standard for the circularity rule. The answer to that is that AB did not change the existing standard. AB used the standard exactly as it had been formulated in 2014 in the Board's cases of matter of MEBG and WGR, and that is that the particular social group has to exist independently of the persecution at issue. Independently, we look it up in the dictionary, it means separate from. Can I interrupt you there? I have a question about the word independently. I read AB, and actually a lot of BIA case law, as relating back this concept all the way back to CA, and they continue to cite CA, and CA says that a group can't be defined exclusively by the harm. So, my question to you has to do with whether you think independently, that word independently in AB is used differently than the BIA has used it in the past. Okay, in the matter of CA, and that's the first time that the Board acknowledged a rule that had been developed initially in this country by the Third Circuit. In matter of CA, the Board cited UNHCR guidelines that said that the group can't be defined exclusively by the harm. The Board did not attempt its own paraphrase or analysis of the question in matter of CA. As time has gone on, it has paid more attention to that, but I will say that the argument that not exclusively is somehow different than independently, those two things may not mean the same thing, but they're not inconsistent. It can be true at the same time that the group is not defined exclusively, cannot be defined exclusively by the persecution, and also is not inconsistent to say, in fact, it can't be defined at all by the persecution. Is that what the government is saying? Are you saying that if a group is defined to have harm included in there somewhere, are you saying that's a poison pill that disqualifies the group and makes it not cognizable? Yes, I am. And the reason for that is just simply the logic and text of the statute. If you're doing that, if you're doing that, Counsel, it seems to me you're definitely reading AB to announce a new rule, and then we have to worry about the APA. Because the BIA has not said that in the past, quite the contrary. Can you focus on this point, please? Yes, ma'am. Yes, the BIA said exactly that in 2014. All AB did was quote the board's cases in 2014 and apply the rule that the board had set out in 2014. And it's not all AB did. AB goes back all the way to CA. And the MEVG and the twin cases in 2014 really are talking about this social distinction. We go from visibility to social distinction, and that's where the action is between particularity and social distinction. But I don't read anything in there. And I thought I heard you say that AB did not announce a new rule. Now it seems to me, it's a terribly important point in my analysis, now it seems to me you're saying that it does announce a new rule. No, Your Honor, I'm saying, absolutely I'm saying it does not announce a new rule because all it did was quote the exact formulation of the circularity, the anti-circularity rule from matter of MEVG. And the argument that not exclusively meant that it could be defined in part by harm, that does not follow from not exclusively. They're asking for an inference from not exclusively. And if you look at either the logic of the statute... Go ahead, go ahead. So if you look at the logic of the statute, if you look at that word independently that they used, and if you look at the way that the board and courts applied the circularity rule before AB, all of those things show that it was understood to mean that the group needed to be defined independently, that the persecution should form no part of the particular social group. For instance, the... Yes, ma'am? Well, they've also said... I think we're almost saying the same thing, but not quite. So I think that the case law does say very expressively, you see whether you look at the common characteristic and you have to apply the three-part test on remand. That was the question Judge Bress was asking about a minute ago. But it ought not be a poison pill, and the case law surely shows it hasn't been if harm is in there, if it is articulated, but we have to then define the group without regard to that harm, to set that aside, is how I read this case law very consistently. Okay, the case law has applied the rule against circularity in cases where the particular social group included other characteristics besides the persecution. For instance, matter of SEG, that was a group where it was young Salvadoran men that were recruited, and the board said that circularity was implicated there. They said that in... And the courts have said that, for instance, in the Russia case, that was one where it was young, attractive Albanian women that were subjected to... for prostitution. So if the group could be rendered non-circular simply by including other characteristics, the board and the courts would not have been applying the circularity rule in those cases. Counsel, as I understand your case now, it seems like you would roll back a lot of case law. So we recognize, for example, women who fear being circumcised should they return to their home countries, women who flouted social norms and therefore face honor killings. So the courts in those cases have defined the group differently, and they've looked at the three-part test, right? They've looked to see whether that group is socially distinct within the relevant community, whether the group is sufficiently specifically defined with sufficient particularity. And they may have problems, larger groups for sure, when we come to nexus, which is a whole different layer. But I'm really struggling with your notion that you think the case law has consistently only recognized as cognizable groups that don't include mention of harm. I don't think... I think the case law is quite the contrary. I will agree with you that there have been lots and lots of cases where the board could have invoked that rule against circularity and it's denied the claims for other reasons. Or there have simply been times when that seems to have been something that the board could have focused on but didn't focus on. But the times when the board has talked about the circularity... anti-circularity rule have been in cases that have other characteristics as well. And if you look at the rationale for why a group can't be defined by persecution plus something else... I mean, say you had a case that the person was not a member of a particular social group, then they got persecuted, and then they defined a group as people who were persecuted. Everyone agrees that that's circular. No, no, no. What the BIA specifically has said about that, right, is that the harm could be relevant for purposes of social distinction. The BIA has definitely said that. But that's a different question. So I think you're sweeping a little too broadly there. But what you said a minute ago I think is quite helpful. When I listed these examples and you said, well, there are certainly cases where those individuals have had other traits or characteristics that are common. I think that's exactly right. Which is why I'm saying I think that we have to define it with exclusive of the harm, set the harm aside, look at the common characteristic, and apply the test. Is that what you mean? Yeah, I mean, I think that... I'm not sure if I'm following you, but you're saying that the group has to be defined independently of the harm. That's absolutely true. The question is, is the role of that... The fact is that the group may have suffered persecution, and the board has made it very clear that that indeed is relevant to social distinction. But the circularity problem happens when you have to analyze the group as proposed by the applicant. That is the thing, and the board made that very clear in WYC. They're not going to go back and try to define the group themselves. The board can't go back and try to define the group itself. We're just going to take the applicant at their word. They define the persecution because they're the master of their claim. They define the particular social group. If a group is defined by persecution as proposed by the applicant, it will fail on that ground. Now, it may well be true that the group has suffered persecution, but that does not belong in the particular social group. That's what the board is saying. Take, for instance, the group in Toboso Alfonso, male homosexuals in Cuba. That group may well have suffered persecution. That, in fact, would be very relevant to whether that group is seen as a particular social group, a socially visible group in a society. But the persecution does not belong in the definition because if you put the definition, persecution in the definition, it is hardwired for failure at the next step. And that is true whether it is defined. So we define it... Right there, counsel, so right there. I'm agreeing with you. Male homosexuals in Cuba, if they had defined their group as male homosexuals in Cuba who were beaten by the police, what we would have to do is define it, consider the common group without regard to the harm, and apply the three-part test. Right, and in this case, she defined her group, and she insisted on defining her group after A.B. is leaving the unable to leave in there, and she specifically said to the board that the reason she was unable to leave is because, and this is page 25 of the administrative record, because Membrano showed her his gun and said not to even think about leaving him because I was his. Consequently, she could not leave her relationship, and therefore it was an immutable characteristic. So she chose to frame her group with this unable to leave, and she met for unable to leave to include the persecution. And that's what made it circular, and that was her choice. And I think you're perhaps suggesting that the court could somehow excise the problem term, and I would say that that is very problematic. It can't be done because the board has this rule that they developed and articulated very clearly in W.Y.C. that they are going to take the particular social group as the applicant defined it, and they're going to, and they have to do that because once the group is defined however it's defined, the immigration judge has to make findings of fact about social distinction, about particularity, about whether there's nexus, and so that needs to be the group that, you need to be talking about the same group that the immigration judge was talking about because otherwise all those findings go for naught, the case would have to be remanded, we would have this perpetual litigation machine. We're not saying something different on this point. Okay, okay, so I just, I would just remind you of W.Y.C. and that this court had recently deferred to W.Y.C. in the Honcho case. And I see I'm well out of time, and unfortunately I talked up all my colleagues' time so I don't know if you have questions about the CIT or the petition. Oh, okay. Okay, so, okay. If you have questions about those issues, I defer to my colleague. If you have any more questions about I.B., I will answer those. Okay, thank you, counsel. Thank you. Okay, Your Honors, quickly as Ms. Green stated, I will be discussing mostly the Convention Against Torture claim and I'm prepared to answer any questions the court may have about the detention issues that were raised by the 28-J letter last night. I guess I will begin with the CAT claim. Just briefly, Your Honors, the record does not compel the conclusion that Ms. Fuentes will be tortured with the government's acquiescence if she's removed to El Salvador. Basically, there are two data points we can look to here. The first is country conditions evidence and then Ms. Fuentes' own experiences or the experiences of those who lived around her. So first, about the country conditions evidence, the government believes the evidence on that point is somewhat inequipoise. The country conditions or the human rights report as well as the Al Jazeera article that she submitted state that the government is attempting to help domestic violence victims. There's a zero tolerance policy. There have been a lot of changes. However, that domestic violence remains a big problem in El Salvador. So at best, the evidence there is inequipoise and in that situation, the court should defer or should uphold the board's decision. But here we have one more data point that tips the scales in favor of the board's decision and that's that Ms. Fuentes' cousin was able to seek effective assistance from the police when she was having difficulties with her partner with whom she had a child. The police did in fact arrest and detain the partner for five days and according to Ms. Fuentes' testimony at page 212, it appears that that was effective to allow her cousin to leave the relationship and thus that shows that the record does not compel the conclusion that the government would acquiesce in Ms. Fuentes' torture. So if there are no other questions about the CAT claim. Yeah, I have no questions here, but if my colleagues do, we could permit inquiry. Okay. Thank you. So then I will move on to the 28J letter that was filed last night. I don't know if the panel's had a chance to review that, but the government would argue that the order in, and I very much apologize for my pronunciation of this, Hachishwa, or Hachihwa Haimes is ultra vires. The court did not have jurisdiction to issue that decision. The two bases given in the decision for issuing, or for ordering the board to order the alien's release in that case is it's the All Rights Act, and then the court cited to the jurisdiction to order a stay in a case, and neither of those give the court jurisdiction to order the release of the alien through, or the non-citizen, through the petition for review process. Do you know whether the government is going to be filing any requests in that case to stay the order or otherwise? I can't answer that question right now. It's still being explored whether the government will, because it just happened last night, so we have not had a chance to fully vet whether or not we will be seeking further review. But I will say that Aguilar-Ramos v. Holder at 594 F. 3rd 701 discusses the court's ability to consider a challenge to detention through the petition for review process and says that that's properly done through habeas, which brings me to sort of my second argument on this, which is that there are two avenues, at least two avenues, that Ms. Fuentes has for challenging her detention. The first, she's detained under 8 U.S. Penal Code 26A, which is discretionary detention, and therefore she has access to the bond procedures. And she has availed herself of those procedures, was denied bond. She appealed that. She then filed about a year later, sometime last year, a motion for a new bond hearing. That was denied. And she has since sought a habeas that's currently pending in the District of Nevada. And so we would argue that there are two avenues that she can take. She can either file another motion for a new bond hearing based on changed circumstances, if she believes that the current situation is a changed circumstance. Second, she could go back to the District of Nevada. Her habeas there is still pending. It's been fully briefed since January. I don't believe I'm handling that habeas, and I haven't seen that she's filed anything regarding the current situation or seeking a decision in that court. So for those reasons, the government believes that the court should not order. Ms. Fuentes has released at this time. But if the court wishes to consider whether it can or can't or whether it should, the government requests the opportunity to brief the issue. OK. Counsel, Judge Gould, if I could ask a question. At what time was the 28-J letter filed? It was about 9 o'clock my time. So I'm guessing about 6 PM California time. OK. Well, those things happen. But I'll just say, speaking for myself, no one's yet sent me that letter, the 28-J letter. So I'll review it subsequently. And we have access to it in our system. But I didn't have it today. And I don't know if the other judges saw it before argument. But what we'll do is if we have questions that require supplemental briefing on that, we'll send an order for that. Thank you, Your Honor. Counsel, can I just confirm with you in the, I don't know how to pronounce it either, so I apologize. This is the case that we're discussing, ZIWA. Did the government have, was there an order to show cause or anything else that you had notice of before that order was issued? No, Your Honor. It was issued at, I believe, 4 or 8 PM yesterday afternoon, or at least that's the time stamp on the email for the attorney who received it. But there was no briefing. It was argued in early March. And then I don't believe anything was filed. I checked the docket. There was no, and I spoke with the attorney who argued it, there was no briefing on the question. It was just sort of out of the blue. Thank you. Thank you, Your Honor. Thank you, Counsel. I think we have a rebuttal argument from Ms. Sparza. And I don't know if we were planning to also have rebuttal from the amicus, but we'll take them one at a time. Ms. Sparza. Thank you, Judge. Give me an extra three minutes. Thank you. I'm just going to briefly address something that the government was discussing with Judge Christin that I think is really important, and that is Judge Christin asked the government if they were saying that no particular social group can include the harm. And actually the government said yes, this is correct. And that's completely incorrect. Judge Christin cited two cases that the board has issued where the harm is part of a particular social group, which means that the Board of Immigration Appeals has recognized that you can have particular social groups that include the harm. It just can't be the only defining factor. It has to be something else there. So in this particular case where we have El Salvadoran women plus the unable to leave, which, again, we're not saying that that is per se harm. It can be harm, but it can also not be harm. It can just be part of her social status as being involved in the relationship and all the social constraints and legal norms that make her stay in a relationship. But if the government is saying that the particular social group can never include the harm, this is completely wrong. And the support that they've cited, too, is a matter of SEG and some other cases, but a matter of SEG, which was about Salvadoran youth who have been subjected to recruitment efforts by the MS and have subjected to a system based on their own personal or moral religious belief. The BI is not rejected because of the harm. The BI rejected that case because of the particularity and the social distinction that they couldn't meet these two other elements. And so the cases that they've cited, a matter of SEG, Perez, Rabanales versus Sessions, those cases were rejected not because of the other elements, the particularity or social distinction. So I don't believe that none of the cases out there support their position that harm can never be included in the definition. I think we can all agree that it just can't be the only defining characteristic. But if that's right, it would seem to me it would exclude almost no proposed social group because it would only, on your view, it would only cover a group that's defined solely by the harm. And in every case, there is going to be some other characteristic that the person inevitably has, whether it's their nationality or their gender or some other feature. And so it's actually kind of hard to think of a group that would be, maybe they exist, to be a few that are exclusively. But I don't think that's ever been the rule. I don't think that it's not just any characteristic. It has to be immutable characteristic. And so nationality and sex have been understood by this court in Perdomo versus Older and Mohammed versus Gonzalez as allowing a group to be cognizable. It doesn't mean that just because the group is large or because many people can be included in this particular social group, then it's kind of a slippery slope argument. They still have to provide proof nexus. So I don't think that it's any characteristic, right? We still have to go back to those three elements, which is immutability, particularity, and social distinction. So I don't think that that would defeat the social group if you allowed it to include the harm. In regards to the argument of a matter of WYC, the government said that the particular social group has to be specifically delineated. And I think that the reason that they're saying this is because at the end of the day, the government of this case is the particular social group is really El Salvadoran women. And they obviously have a problem with this case because the Ninth Circuit recognized that Guatemalan women in Perdomo v. Holder could be a cognizable social group. Ms. Esparza, I'm sorry to interrupt, but you're more than a minute over your extra three minutes. So I need to ask you to bring your argument to a close unless Judge Kristen or Judge Bress have other questions they want to pose. I don't. Thank you. No, I do not either. Okay. Yes. I would just cite to the case of Silvestre Mendez and Cardozo v. Holder, which would oppose really the argument that the government is making in WYC in that you can have other characteristics and not just the delineated group that was proposed by the petitioner. And that would be all. Okay. Well, thank you, Counsel. Let me ask a question of the plain bookie who was the abacus. Is she still on the line? Yes, Your Honor. I'm here. Did you want to do two minutes of rebuttal? Yes, Your Honor. We would prefer that. Okay. Then let us thank Mrs. Sparza, and we'll let Ms. Bookie have two minutes, and we'll close the end of the argument. Thank you, Your Honor. I'll respond to just two points. And first, with respect to the group existing independent of the harm, in this instance, even if we were to accept that inability to leave references of the harm in some part, which we do not concede, and was not the view of the agency for nearly two decades, but this group would still not violate the circularity principle because nexus can be disturbed in these cases. Gender, nationality, and relationship status are the core motivating traits of the abuser. The group exists independent of the harm because even if the persecution were one factor, a woman becomes a member of this group immediately upon entering the relationship, even before any abuse would begin. But on this case, there's not a record that was the argument that was made with respect to unable to leave was based on the domestic violence. There was not another argument made about, say, for example, social customs or some other feature disconnected to the harm that would have created that inability to leave. So even if you're right in theory, it would seem that I don't see how that would work in this particular case. Well, Your Honor, the board did not actually look at the underlying facts or circumstances in this case when it said that the group was impermissibly circular. It simply relied on the Attorney General's decision that these groups are forever and always circular based on his distorted understanding of what inability to leave means. I don't think I can agree with that because I think in this case what the argument was was that the inability to leave was based on domestic violence, and so that's what the BIA focused on, which was the argument being made to it. If a different argument had been made to it, they would have focused on the different argument. Well, Your Honor, the petitioner did raise other reasons why she was unable to leave, looking at the underlying country conditions and the social norms that subordinate women to men in their relationship. We would just, that the board needs to evaluate the underlying factual circumstances for why a woman is unable to leave and not simply rely on the Attorney General's decision to categorically close a social group without any individualized analysis. Okay. Thank you, Counsel. I think you've passed your extra two minutes, and so if you could wrap up in a sentence, then we'll end the argument. Thank you for the opportunity, Your Honor. Yes. In our view, MATTER may be really up and settled for principles of asylum law that cases need to be evaluated on a case-by-case, in fact, in record cases and is not entitled to this Court's deference as an unreasonable violation of asylum law. Okay. Thank you, Counsel. Unless there are questions from Judge Kristol or Judge Brass, that will conclude this argument, and the Fuentes-Reyes case shall now be submitted, although at least one judge on the panel, namely I, has not read that 28-J letter yet, so if we need something on that, we'll issue a supplemental briefing order. The case is submitted. All rise. This Court, for this session, stands adjourned.
judges: Gould, Christen, Bress